# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**CHRISTOPHER PLOUSE**,

    Petitioner,

v.                                                                 **CIV. NO. 04-1066 JH/DJS**

**GEORGE TAPIA, Warden**,

    Respondent.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

1. THIS MATTER is a proceeding on a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. §2254. Petitioner, who is represented by counsel, seeks to vacate the judgment and sentence entered in No. CR-99-593 in the Third Judicial District, Dona Ana County, of New Mexico. In that proceeding Petitioner was convicted following a jury trial of one count of Escape or Attempt to Escape from the Penitentiary. As a result of the conviction and of being found to be an habitual offender, Petitioner was sentenced to a term of imprisonment of ten years to be followed by two years on parole. That sentence was imposed to be served consecutively to another sentence from another criminal proceeding.

---

[1] Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the ten-day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

2. Petitioner challenges his conviction and sentence on the grounds that he was denied effective assistance of trial counsel, that his right to a speedy trail was violated, and that he was denied his constitutional right to material exculpatory evidence.

3. As found by the New Mexico Court of Appeals, Petitioner was initially convicted of two counts of second degree murder in 1992 and entered the New Mexico prison system. Answer, Exhibit K. In 1999, he attempted to escape from the Southern New Mexico Correctional Facility, about one month after being placed in the general population from a close-custody unit. Id. The New Mexico Court of Appeals noted that Petitioner smuggled a large rock into the prison from a work detail and, with the aid of another inmate, used it to hammer through the wall of a cell. Petitioner crafted a cardboard vent cover to hide the hole made in the wall. Once Petitioner and the other prisoner crawled through the wall and ventilation system, they were apprehended in the prison yard. Id. Petitioner asserts that, after his conviction in 1992, he was repeatedly threatened by members of New Mexico prison gangs and subject to multiple assaults by members of one of those gangs. Petition (Docket No. 1), p. 4. Petitioner asserts that he and another inmate feared an attack by prison gang members in retaliation for an unrelated assault. Id. at 5. He contends that the other inmate, Randall Reynolds, knocked the hole in the wall of his cell, fabricated the fake vent, and also fabricated dummies to hide the escape. Id. Petitioner states that Reynolds told him that Petition must accompany Reynolds in an escape to avoid being killed and that Petitioner agreed. Id. Petitioner asserts that each of the three attorneys appointed to represent him at various times with respect to the escape charges were ineffective. Id. at 5-6. Petitioner complains that Reynolds, who he characterizes as the "mastermind" of the escape and a co-participant, was acquitted of the offense of escape from prison when tried separately for the same offense. Id. at 7.

4. 28 U.S.C. §2254(b)(1) and (c) require that a state prisoner seeking relief must exhaust state remedies before seeking to obtain relief in a federal *habeas* proceeding. See generally, Rose v. Lundy, 455 U.S. 509 (1982). Respondent concedes that Petitioner has exhausted his state court remedies as to the claims brought in the instant petition. However, Respondent contends that Petitioner has procedurally defaulted his claim that he was denied his right to exculpatory evidence. In addition, Respondent moved to dismiss the petition, arguing that Petitioner's first two claims should be dismissed on their merits and that his third claim should be denied on the grounds of procedural default.

5. Procedural default is a doctrine based in comity and federalism. Jackson v. Shanks, 143 F.3d 1313, 1317 (10th Cir. 1998) (citing Coleman v. Thompson, 501 U.S. 722, 730 (1991))[2]; see also Maes v. Thomas, 46 F.3d 979, 984 (10th Cir.) cert. denied, 502 U.S. 1110 (1995) (Federal courts do not address issues that have been defaulted in state court on an independent and adequate state ground unless cause and prejudice or a fundamental miscarriage of justice is shown). Petitioner contends that his claim that he was denied exculpatory evidence was raised in two ways. First, that his right to exculpatory evidence was denied contrary to Brady v. Maryland, 373 U.S. 83, 87 (1963) and second, in his state *habeas* petition, by the allegation that his attorney was ineffective for failing to object, pursuant to Brady, to the prosecution's failure to disclose a corrections department manual and other helpful corrections department records. Petitioner contends that because he raised alternative claims relating to the alleged Brady violation, he has not procedurally defaulted the claim.

6. The Court agrees with Respondent that Petitioner procedurally defaulted his claim that he

---

[2]Procedural default occurs when a *habeas* petitioner fails to exhaust state remedies and the court to which he would be required to present his claims in order to meet the exhaustion requirement would find those claims procedurally barred. See Coleman, 501 U.S. at 735, n. 1.

z

was denied exculpatory evidence. That contention was raised before the New Mexico Court of Appeals, which denied relief on the claim on the ground that it was not properly preserved. Answer, Exhibit K, p. 26. That finding of default in his direct appeal constitutes an independent state ground for denying the claim. Petitioner's allegation in his state *habeas* petition that his attorney was ineffective for failing to object to the alleged Brady violation is a separate and distinguishable claim. The Court agrees with Petitioner that his claim of ineffective counsel based upon failure to object to an alleged Brady violation has not been procedurally defaulted and will consider that portion of his *habeas* petition.. However, by raising that issue in the context of an ineffective assistance of counsel claim, he did not fairly present the state courts with an opportunity to consider his claim that he was denied due process by the state's failure to disclose Brady material and that claim cannot be considered by this Court absent a showing of cause for the default and prejudice stemming from it.

7. Petitioner can excuse his default if he can show cause for the default and prejudice from it or that exercise of the default will result in a fundamental miscarriage of justice. Maes v. Thomas, 46 F.2d 979, 984 (10th Cir.) cert. denied 514 U.S. 1115 (1995). In the context of procedural default, cause is some objective factor external to the defense which impedes efforts to raise the defaulted claims in state court. Id. at 987 (citation omitted). Petitioner has not shown cause for his default or that exercise of the default will result in a fundamental miscarriage of justice, as he did not address any of these issues in his response to the motion to dismiss.

**STANDARD OF REVIEW**

8. In examining the merits of Petitioner's claims, the Court views the arguments in light of the standard set forth in 28 U.S.C. §2254(d), which provides that:

An application for writ of *habeas corpus*...shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the

>adjudication of the claim-
>    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

This language means that if a state court ruled upon the merits of a *habeas* petitioner's claims, a federal court may grant his petition only if the petitioner can establish that the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law;  decided the case differently than the Supreme Court has on a set of materially indistinguishable facts; or unreasonably applied the governing legal principle to the facts of the prisoner's case. Elliot v. Williams, 248 F.3d 1205, 1207 (10th Cir. 2001) (citing Williams v. Taylor, 529 U.S. 362 (2000)).

9. Petitioner asserts that the New Mexico courts' denial of his claim do not constitute rulings "on the merits" and are not entitled to deference in this proceeding. However, deference is afforded to state courts' decisions even where the state court did not specify the reasons underlying its decision. See Aycox v. Lytle, 196 F.3d 1174, 1177 (10th Cir.1999). "Where, as here, there is no indication suggesting that the state court did not reach the merits of a claim, we have held that a state court reaches a decision 'on the merits' even when it fails either to mention the federal basis for the claim or cite any state or federal law in support of its conclusion." Gipson v. Jordan, 376 F.3d 1193, 1196(10th Cir. 2004) (citing Aycox) cert. denied, 126 S.Ct. 729 (2005). Petitioner's assertion that the summary denial of his state petition for a writ of *habeas corpus* precludes a deferential standard of review is contrary to the precedent established in the 10th Circuit Court of Appeals.

**RIGHT TO SPEEDY TRIAL**

10. The Sixth Amendment of the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."  In Barker v. Wingo, 407 U.S. 514

(1972), the Supreme Court articulated a four-factor balancing test to determine whether a defendant has been deprived of his right to a speedy trial. The four factors to be considered are (1) the length of the delay, (2) the reason for the delay, (3) the extent to which the defendant asserted his speedy trial rights, and (4) prejudice to the defendant. Id. at 530-32.

11. The New Mexico Court of Appeals considered Petitioner's speedy trial claim under both New Mexico and Supreme Court precedent, including Barker. Answer, Exhibit K, p. 17-18, 21-26. That court found that one year and nine months passed between Petitioner's arraignment and his trail. Id. at 19. The New Mexico Court of Appeals noted that Petitioner's first two attorneys, who were appointed to represent him, withdrew from that representation due to being disbarred or being disbarred from practicing before the New Mexico Court of Appeals. Id. Finding the delay of Petitioner's trial presumptively prejudicial, the court proceeded to balance the Barker factors against each other. Id. at 22.

12. In balancing the Barker factors, the New Mexico Court of Appeals was unwilling to weigh the delays caused by Petitioner's first two attorneys requesting extensions of the trial date against the state, despite the withdrawals of those attorneys and their alleged inadequate performance. Id. at 23. Petitioner argues that the delay should be charged against the state because his attorneys were appointed to represent him, contending that the poor performance of his state-provided attorneys constitutes negligence by the state. Petitioner offers no authority for the proposition that delays occasioned by state-appointed counsel weigh differently from those attributed to retained counsel. Further, Petitioner offers no other assertion of bad faith on the part of the state and no assertion of improper delay by the prosecution. Nonetheless, Petitioner correctly asserts that a negligent failure to bring a defendant to trial weighs against the state, citing Doggett v. United States, 505 U.S. 647,

657 (1992). Petition (Docket No. 1, p. 22). However, the New Mexico Court of Appeals noted that the state had opposed one of the continuances requested by Petitioner's attorney due to concern over the availability of witnesses, which is hardly comparable to the eight and one-half year delay occasioned by the government's failure to seek out the defendant in Doggett. Cf. Doggett, 505 U.S. at 652. The rationale of the holding by the New Mexico Court of Appeals is not contrary to clearly established federal law.

13. Concerning the second Barker factor, the New Mexico Court of Appeals concluded that Petitioner's assertion of his speedy trial right was not made until February 16, 2001, some two months prior to his trial. Answer, Exhibit K, p. 24. The court was not swayed by Petitioner's provision of letters he claimed to have sent in August, 1999 and September, 2002 because those letters did not appear anywhere in the record other than as copies attached to the motion to dismiss which he filed on February 16, 2001.

14. In his *habeas* petition, Petitioner argues that "affirmative proof of particularized prejudice is not essential to every speedy trial claim." quoting Doggett, 505 U.S. at 655. While true, delays of four and one-half years have been held insufficient to relieve the need to show particularized prejudice in order to succeed in a speedy trial claim. Jackson v. Ray, 390 F.3d 1254, 1263-64 (10th Cir. 2004). Further, "[w]hile prejudice is not essential to a violation, there is ... reluctance to find a speedy trial deprivation where there is no prejudice." United States v. Brown, 600 F.2d 248, 254 (10th Cir.1979). Petitioner contends negligence by the state delayed his trial. "[T]o warrant granting relief, negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice." Doggett, 505 U.S. at 657. The New Mexico Court of Appeals therefore correctly considered the prejudice stemming from the twenty-one month delay in Petitioner's trial.

7

The factors considered by the New Mexico Court of Appeals in assessing prejudice to Petitioner were identical to those considered in federal constitutional analysis. Answer, Exhibit K, p. 24-5.[3] The court found that Petitioner did not claim that the delay impaired his defense. Answer, Exhibit K, p. 25. With regard to oppressive pre-trial incarceration, Petitioner was incarcerated on other charges and the New Mexico Court of Appeals noted that there was no record that he was held in segregation due to the pendency of his escape charges alone, but rather he was frequently placed in involuntary segregation during his imprisonment. Id. The mere "possibility of prejudice is not sufficient to support [the] position that ... speedy trial rights [are] violated." United States v. Loud Hawk, 474 U.S. 302, 315 (1986). Lastly, the New Mexico Court of Appeals noted that Petitioner did not show that he suffered from emotional trauma or pre-trial anxiety which would substantially tip the prejudice prong in his favor. Answer, Exhibit K, p. 25.

     15. In order to grant *habeas* relief on the speedy trial claim, this court must find pursuant to clearly established Supreme Court law that there is no possible balancing of these Brady factors that is consistent with the New Mexico Court of Appeals' decision. Jackson, 390 F.3d at 1267. While the Supreme Court has held that a showing of prejudice to the defense at trial is not essential to establish a federal speedy trial claim, Moore v. Arizona, 414 U.S. 25, 25 (1973) (*per curiam*), Petitioner has failed to show that the New Mexico courts' analysis of the constitutional import of his twenty-one month pretrial delay is contrary to clearly established federal law. Consequently, he is not entitled to relief on this claim. See Jackson, 930 F.3d at 1267 ("Most importantly, there is no clearly established

---

[3] The three interests that "the speedy trial right was designed to protect": (1) prevention of oppressive pretrial incarceration, (2) minimization of the accused's anxiety and concern, and (3) minimization of the possibility that a delay will hinder the defense. Barker, 407 U.S. at 532, 182. Impairment of the defense is the most important interest. Id.

Supreme Court law mandating a balancing that reaches a result contrary to the [state court of appeals'] decision."

**INEFFECTIVE ASSISTANCE OF COUNSEL**

16. In order to prevail on a claim of ineffective assistance of counsel, Petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Judicial scrutiny of counsel's performance is highly deferential and indulges a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. Rogers v. United States, 91 F.3d 1388, 1392 (10th Cir. 1996); Miles v. Dorsey, 61 F.3d 1459, 1478 (10th Cir. 1995) (citations omitted). Under the prejudice aspect of Strickland as applied to trial counsel, a federal court inquires whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Rogers, 91 F.3d at 1392. Petitioner must establish that counsel's deficient performance rendered his trial fundamentally unfair or unreliable. Id.

17. Petitioner asserts that his attorney failed to investigate his case adequately. Petitioner states that his attorney failed to interview Randal Reynolds, his partner in the escape, who would have testified that he planned and organized the escape alone and also failed to interview Petitioner's friends and family members who would have testified regarding Petitioner's contemporaneous reports of fear for his safety. Petitioner attached a declaration by Reynolds to his *habeas* petition in which Reynolds states that he "planned, executed and carried out the making of dummies and fake vent" in order to escape from prison. Petition, Docket No. 1, Exhibit B to Exhibit E (State *habeas* petition). Reynolds also states that "I then talked Christopher Plouse into going with me." Id. This declaration contradicts Petitioner's testimony at trial. At trial, Petitioner testified that he helped formulate the

9

escape plan. "Well, me and Randy were out on a detail at work and we noticed the pipe chase door was open, and we thought we could probably break through that wall and get out." Record Proper, Transcript of April 24-25, 2001 jury trial, testimony of Christopher Plouse, p. 139. Petitioner smuggled the rock used to hammer through the prison wall into the cell block and kept watch while Reynolds battered through the wall. Id. at 143. Petitioner further testified that he constructed the fake vent cover used to hide the escape attempt. Id. at 144-45.

18. Petitioner testified at length concerning his apprehension of danger in the prison, attributing it partially to a vendetta by the director of the Southern New Mexico Correctional Facility where he was held. Id. at 139, 147-150. Testimony by friends or relatives regarding Petitioner's perception of danger may have bolstered his claim of duress. However, Petitioner offered no more than the bare assertion that such favorable testimony could have been presented. Further, that testimony would have to overcome Petitioner's admission that he could have sought protective custody, but chose to escape instead in order to avoid a stigma for the rest of his period of incarceration and to avoid the restrictive conditions therein. See id. at 187-188. Exhibits were introduced at trial indicating at least two prior escape attempts or possession of escape tools by Petitioner. Record Proper, Transcript of April 24-25, 2001 jury trial, closing argument of Tom Clark, p. 315, 318, 321-22. Given the whole of the record, the substantial evidence of Petitioner's repeated escape attempts from various facilities and Petitioner's active participation in planning and executing the escape, Petitioner has not demonstrated that counsel's failure to call Randal Reynolds or friends and family members undermines confidence in the outcome of the trial. See Foster v. Ward, 182 F.3d 1177, 1185, n. 2 (10th Cir. 1999).

19. Petitioner next contends that his attorney was ineffective for failing to consult expert

10

witnesses. Specifically, he asserts that his attorney should have consulted with an expert on prison classification and sought testimony regarding the risk posed by prison gangs. Petition, p. 15. Petitioner points out that such testimony was elicited in Randal Reynold's trial, which resulted in an acquittal. The different result in Reynold's trial is not persuasive, as Petitioner has not shown that Reynolds was in a similar position, apart from being his partner in the escape. For instance, there is no evidence that Reynolds exhibited a history of escape attempts similar to Petitioner's. Further, Petitioner has not shown that Reynolds had a similar history of violence within prison. Petitioner testified that he defended himself against two inmates by stabbing them after they attacked him. Record Proper, Transcript of April 24-25, 2001 jury trial, testimony of Christopher Plouse, p. 153. Exhibits at trial recorded another incident where Petitioner was the aggressor in stabbing another inmate. See Record Proper, Transcript of April 24-25, 2001 jury trial, closing argument of Tom Clark, p. 318. Thus, Petitioner has failed to show prejudice from his attorney's allegedly ineffective failure to call an expert witness by comparing the result of his trial with the result of Reynold's trial.

20. Petitioner asserts that his attorney suffered a conflict of interest once he challenged counsel's effectiveness at trial. He further contends that the Court forced him to choose between continuing at trial with his attorney and representing himself. The record does not indicate that Petitioner requested replacement counsel. Record Proper, Transcript of April 24-25, 2001 jury trial, p.251.  "An actual conflict of interest results if counsel was forced to make choices advancing other interests to the detriment of his client. Without a showing of inconsistent interest, any alleged conflict remains hypothetical, and does not constitute ineffective assistance." United States v. Alvarez, 137 F.3d 1249, 1252 (10th Cir.1998) (citations omitted). Even if a defendant shows his lawyer had interests divergent from his own, he must also "establish that the conflict of interest adversely affected

his counsel's performance." Mickens v. Taylor, 535 U.S. 162, 174 (2002). "'[U]ntil ... a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance.'" Id. at 175.

21. Petitioner posits that once he challenged his counsel's alleged failure to investigate his case or pursue a duress defense, his attorney was forced to choose between defending his own actions and admitting his mistakes, thereby hurting his own interests. However, in order to constitute an actual conflict of interest, the interests of counsel and the defendant must be divergent in the litigation such that the attorney has an interest in the outcome of the case that is adverse to the defendant's. Hale v. Gibson, 227 F.3d 1298, 1313 (10th Cir. 2000). The failure to show a conflict of interest does not preclude Petitioner from demonstrating that his counsel was ineffective as a result of differing interests. Id. at 1313, n. 4. The difficulty with the Petitioner's thesis in this case is that the alleged conflict or difficulty for counsel did not arise until near the close of trial, when counsel raised the matter before the trial court. Record Proper, Transcript of April 24-25, 2001 jury trial, p.242-256. Petitioner had sought to represent himself, at least in part, well before the appointment of the attorney who defended him at trial. Id. at 259-260. However, that fact does not demonstrate how his attorney's interests were implicated, but rather a long standing desire to present his case and an understandable ambition to control his trial strategy. In sum, Petitioner has not shown any action taken by his attorney *as a result of the alleged pursuit of his self-interest* which rendered that attorney ineffective at trail.

22. As noted in his response to the motion to dismiss, Petitioner argues that his attorney was ineffective for failing to object to the provision of exculpatory evidence pursuant to Brady v. Maryland, 373 U.S. 83 (1963). In his state *habeas* petition, Petitioner noted that he attempted to

introduce into evidence at trial a Security Threat Group Manual, to which the prosecution objected on the ground that it had not been disclosed in discovery. Petition (Docket No. 1), Exhibit E, p. 20. Petitioner argued to the state court that the manual would have shown the danger posed by prison gangs and the particular danger posed to white inmates by the Syndicato de Nuevo Mexico gang. Id. Petitioner contends that his attorney should have objected to the prosecution's failure to disclose the manual. Petitioner testified regarding his stabbing and the danger from prison gangs, as did Dee Standridge, a captain at the Southern New Mexico Correctional Facility, on cross examination. Record Proper, Transcript of April 24-25, 2001 jury trial, Testimony of Dee Standridge, p.31-35. Viewing the record as a whole, Petitioner has not satisfied the requirement of Strickland of showing prejudice from his attorney's failure to object on the basis of a Brady violation to the failure to produce the manual, which would have constituted cumulative evidence reinforcing his testimony and that of Captain Standridge.

24. Petitioner contends that he was prejudiced by the cumulative effect of his attorney's errors, arguing that prejudice is obvious given the different result in Randal Reynold's trial. Where error by counsel has not been shown, no cumulative error has been demonstrated. Odum v. Boone, 62 F.3d 327, 329 n.1 (10th Cir. 1995). Here, the Court has focused primarily on the lack of prejudice from the alleged errors. Even in cumulative effect, Petitioner has not shown that the confidence in his trial is undermined. Petitioner's theory at trial was that officials of the New Mexico Corrections Department and a large prison gang were seeking to harm him. He knew that duress was a defense to the crime of escape at the time he made his attempt. Record Proper, Transcript of April 24-25, 2001 jury trial, Testimony of Christopher Plouse, p.192. Petitioner had to overcome his own history of escape attempts in order to convince the jury that fear for his life inspired him to attempt another

13

escape. In addition, Petitioner had to convince the jury that protective custody was not an alternative to escape as a means of protecting himself. Counsel's alleged failures all relate to failure to present evidence corroborating Petitioner's perception of danger and showing the danger from prison gangs in New Mexico.  Having reviewed the record proper, the Court cannot say that the New Mexico courts' denial of relief on this ground or any of the other grounds presented by Petitioner is contrary to contrary to or involved an unreasonable application of clearly established Federal law or that it resulted in a decision that was based on an unreasonable determination of the facts.

**RECOMMENDED DISPOSITION**

That Respondent's Motion to Dismiss be granted, this petition be denied and this matter dismissed with prejudice.

_____
**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**